# COUNTY OF OXFORD.

## ALFRED W. STEARNS & *al. versus* THE ATLANTIC AND ST. LAWRENCE RAILROAD CO.

The statute of 1842, c. 9, § 5, providing that a railroad corporation shall be held responsible to the owner of property that has been injured by fir communicated by a locomotive engine of the corporation, will not be held to be unavailing to the person whose property has been thus injured because neither that, nor any other statute, provides a remedy, or prescribes a form of action; for then, he may declare specially on his own case.

To hold that there is no *remedy* would be, in effect, a denial of the *right* to recover; whether the right exist by statute or at common law.

Neither notice nor demand is necessary before bringing suit, under this statute.

If there be, in the writ, no allegation of wrong or fault of the defendants, the writ may be amended. But, after verdict, the amendment will be unnecessary. Whether such an allegation is material — *quære.*

It was not an unauthorized exercise of Legislative power to render a railroad corporation liable for damages, as was provided by § 5, of c. 9, of the laws of 1842, and to require that degree of care that will prevent any such injury as the statute was designed to provide against. And, if any such injury occur, the corporation cannot be regarded as without *legal* fault.

The defendant corporation will not be relieved from the liability imposed by this statute, by reason of having leased their road to the Grand Trunk Railroad, who were in possession, controlling and managing the leased road, at the time of the injury; —and notwithstanding the fire was communicated by a locomotive engine, which the lessees had themselves furnished.

EXCEPTIONS from the ruling of HATHAWAY, J.

This was an action to recover for the destruction of plaintiffs' building and other property, by fire alleged to have been caused by a locomotive engine of defendants.

The declaration in plaintiffs' writ, which is dated October 10, 1856, is "in a plea of the case; for that the plaintiffs, at Paris, in said county of Oxford, on the 24th day of November, A. D. 1855, were seized of a large chair factory, with all machinery, tools, and other apparatus necessary for the manufacture of chairs, of great value, to wit, of the value of four thousand dollars; and also were the owners of and had in said factory, on said 24th day of November, A. D. 1855, large quantities of lumber, and other materials used in the manufacture of chairs; and also large quantities of chairs, some of which were wholly and others only in part completed, of the value of two thousand dollars; all of which property, real and personal, was situated along its route, and was near to the track of the Atlantic and Saint Lawrence Railroad Company, a corporation duly established by a law of this State. And, on said 24th day of November, A. D., 1855, said chair factory and all the machinery thereof, and all the tools, lumber, chairs, and other property above named, were injured and wholly destroyed by fire communicated by a locomotive engine of the said railroad corporation; to the damage of the said plaintiffs, as they say, the sum of six thousand dollars, by reason of which, and by force of the statute in such case made and provided, the Atlantic and Saint Lawrence Railroad Company are responsible for, and ought to pay to the plaintiffs, the damages so by them suffered and sustained, and an action hath accrued to the plaintiffs to sue for and recover the same of said corporation."

This action was brought under the 5th section of c. 9 of the public laws of 1842, which provides that, "when any injury is done to a building or other property of any person or corporation, by fire communicated by a locomotive engine of any railroad corporation, the said corporation shall be held responsible in damages to the person or corporation so injured; and any railroad corporation shall have an insurable interest in the property for which it may be held responsible in damages, along its route, and may procure insurance in its own behalf."

The defendants tendered the issue to the country, authorized by c. 115, § 42, Revised Statutes, in these words, that "they do not owe the sum demanded by plaintiffs," which was joined.

The destruction of the property at the time alleged, was not called in question.

After the opening of the plaintiffs' case, the defendants objected to the maintenance of the action, and stated the following points of objection:—

1. That no remedy is given by the statute of 1842, and that the statute does not prescribe or authorize any action, or form of action, or mode of trial, by which the alleged rights and liabilites of the parties can be determined and no such remedy is given by the general statutes, or by the common law.

2. That the statute of 1842, is, in itself, incomplete, repugnant, and wholly ineffectual to create any such right as is claimed to be in the plaintiffs, or any such liability as is claimed to rest upon the defendants.

3. That the statute is unconstitutional in this;—that the Legislature cannot impose a penalty where there is no fault, and no violation of law; and cannot create a liability, compelling one subject to suffer a loss in favor of another, without any protection to the sufferer against such loss, or any equivalent for it.

4. That no action can be maintained under this statute, until notice of the property alleged to have been injured, given to the railroad corporation by the owners, and demand of the sum for which the corporation is alleged to be responsible.

Which several objections were overruled by the presiding Judge for the purposes of this trial.

Parol evidence was offered by the plaintiffs, to the effect, that Thomas Stearns, one of the plaintiffs, in 1849, was in possession and claimed to be the owner of the land on which the factory stood, and continued to hold and occupy it until the time of the fire; that by a verbal partnership agree-

ment, in 1849, the two plaintiffs agreed to construct the building, supply it with machinery and stock, and carry on the business as partners; Alfred Stearns paying one quarter of the expenditure, and being the owner of one quarter of the building, machinery and stock, and Thomas the other three quarters; that the building was erected in the fall of 1849, and that they continued so to hold and occupy until the time of the fire.

Defendants objected to this evidence of title, as legally incompetent, but it was admitted by the Court.

It was in evidence, and not controverted, that the defendant corporation, under authority of an Act of the Legislature, passed March 29, 1853, had leased its railroad to lessees, and that, on the 5th day of August, 1853, the lessees entered with possession, and had ever since had the exclusive possession, management and control of the road and property leased, and had operated the line exclusively by their own officers and agents; that the defendant corporation, since the date of the lease, had had no direction or concern whatever in working the road; that the locomotive engine, by which the fire was alleged to have been caused, was a new engine, purchased after the lease, and first placed on the line in July, 1854.

The plaintiffs contended, that by the terms of the Act, authorizing the lease, this action could be maintained against the defendants, the lessors; which the defendants denied, and prayed instructions thereon, which are hereafter recited.

The lease was made a part of the case.

Plaintiffs offered in evidence an indenture made between Thomas Stearns and the defendants in 1854, showing a settlement of damages and adjustment of lines between them.

Defendants offered evidence tending to show, that before the time of the fire, the plaintiffs, in carrying on their business and disposing of their lumber, had been in the habit of depositing, and at the time of the fire had deposited, combustible material within the limits of the located way of the railroad adjacent to the factory of the plaintiffs; that the line of the defendants' located way, towards the building, being six-

teen feet distant from the rails, as established by the indenture before mentioned, with Thomas Stearns, there remained a space, between that line and the building, of eleven or twelve feet in width, at one corner of the building, and nineteen or twenty feet at the other; that the plaintiffs, before and at the time of the fire, had caused to be deposited and accumulated upon the sixteen feet breadth of way, belonging to the defendants, quantities of lumber, wood, chips and rubbish, tending to increase the risk of fire from locomotives.

This was denied by the plaintiffs, except as to two piles of wood, one of which was burnt and the other scorched, both, as they contended, by the fire of the building, after the building was in flames, and they offered evidence in support of their position.

Defendants offered in evidence the record of the location of the railroad, at the place in question; a first location recorded June 23, 1849, and a second one recorded Dec. 17, 1850.

It appeared in evidence, that the building was erected in the fall of 1849, and partly stocked with machinery and materials in that fall and the winter following; that a considerable part of the machinery, which was in the building at the time of the fire, was not put in until 1851, and that the stock of materials and fabrics was disposed of and replaced from time to time in the usual course of business.

It appeared, by evidence not controverted, that, at the time of the fire, the plaintiffs had a subsisting policy of insurance for $1000, in their own favor, upon the building, machinery and stock. It did not appear whether or not the plaintiffs had recovered any thing upon this policy.

The charter of the railroad company to make a part of the case.

The defendants prayed the Court to instruct the jury as follows:—

1. That by the charter of the Atlantic & St. Lawrence Railroad Company, that company is not subject to the provisions of the Act of 1842.

2. That, upon the evidence in regard to the lease of the railroad, and the management and control of the same, and the purchase of the engine by the lessees, this action cannot be maintained against the lessors.

3. That the indenture and settlement with Thomas Stearns, in 1854, was an extinguishment of all such claim as is now set up and is a bar to the present action.

4. That if, at the time of the fire, the plaintiffs had a subsisting policy of insurance upon the property, for which compensation is now claimed, they are not entitled to recover in this action, for any part of the property embraced in such policy.

5. That if the jury find that the property, or any part of it, for which compensation is now claimed, was erected or placed on the premises, after defendant corporation had made and filed its location, the plaintiffs cannot recover for any such property.

6. That the defendants are not responsible for any stock of lumber, or other stock, or any fabrics manufactured, or partly manufactured, which were destroyed or injured by the fire in question, nor for any machinery or apparatus so destroyed, which were not, in the strictest sense, fixtures to the building or land.

7. That it was the duty of the plaintiffs not to place any combustible material within the located way of the railroad adjacent to the plaintiffs' premises, in such manner as to increase the risk of fire from locomotive engines, nor to give their consent that any other person should so place any such material; and to use all reasonable diligence, and make all reasonable efforts, in managing their own property and carrying on their own works, so as not to cause, or knowingly to suffer such increase of risk; and, that if the jury find that the plaintiffs did so increase the risk, and did not use such diligence and make such efforts, the verdict should be for the defendants.

This *seventh* instruction was given by the presiding Judge,

with the qualification,—"provided the loss was occasioned in any manner by such increased risk."

8. That upon the evidence offered by the plaintiffs, of their title to the property in question, taken in connection with the allegations in the writ, the plaintiffs are not entitled to recover.

Which several instructions the presiding Judge declined to give, with the exception of the seventh, which was given with the qualification above stated.

The verdict was for the plaintiffs.

*Barnes,* in support of defendants' exceptions:—

Since the exceptions were taken in this case, the decision of the Court in *Pratt* v. *the same defendants,* 42 Maine, 579, has rendered a part of the exceptions unavailable for further discussion.

That case, like the two cases in the Massachusetts Reports, under a similar statute, appeared to present one or two prominent and special grounds of defence, supposed to be so well maintainable, as not to call for examination of certain elemental objections to proceedings under this very peculiar statute. The case of *Pratt,* if it does not actually overrule much of what is said in the previous case of *Chapman,* 37 Maine, 32, certainly takes away from railroad defendants, the confident reliance, which they had placed upon the several statements and *dicta,* contained in the latter case, respecting the liability to fire risk for mere personal and moveable property, a reliance the more reasonably entertained, because the two Massachusetts cases, show explicitly, that they were prosecuted only for injury to real, fixed property, and no trace appears in the cases, or in the discussions by the Court, of any claim for loss of personalty, though such loss must necessarily have occurred.

We are compelled also to regard the decision in *Pratt's case,* as rendering it unavailing to discuss any further, the relations supposed to be created by the legislative equivalent, of protection by insurance, against the liability declared in

the statute. For nearly all cases that can arise, the statute must now be treated as if no such provision were made for the protection of the companies, as if there were only the naked declaration of their responsibility, without corresponding safeguard or equivalent of any kind.

Under these circumstances, the discussion of the present case will be confined to a point, which goes to the elemental meaning and effect of the statute, and to one or two others, which are special issues raised by the particular facts of the case.

1st. The defendants except and object that this action cannot be maintained because no remedy is given by the statute of 1842 — the statute does not prescribe or authorize any action or form of action, or mode of trial, for recovery of the damages alleged, and no such remedy is given by the general statutes or by the common law.

It is plain upon the face of the statute, that it does not, of itself, give any action or prescribe any form of remedy. It is equally plain that the deficiency is not supplied by the general statutes. The familiar provision in R. S., 1841, p. 500, that all penalties may be recovered by action of debt, where no other form of action is prescribed by the statute imposing such penalties, has no application here, because this is not a case of penalty, nor have the plaintiffs brought an action of debt. This provision, however, does indirectly declare, that if *penalties*—a subject so familiar to the analogies of the common law—require specific statutory declaration of a remedy and form, by which they may be recoverable, much more is a statutory provision of remedy indispensable for recovery against a party who has done no wrong, broken no contract, violated no rights, neglected no caution, omitted no diligence, but has merely prosecuted a lawful business, and discharged a duty required by statute, in the only mode in which it could possibly be accomplished.

But the absence of all statutory remedy compels the plaintiff to rely upon common law authority for bringing an "action on the case," as this is said, in the writ, to be.

We instantly encounter the anomaly, not to say the absurdity, of an action on the case, where the writ contains no allegation of any wrong, or fault of any kind, and where, of course, no proof of any wrong could be offered, and none was offered, in fact, or pretended to exist.

It is an incontrovertible first principle of the common law that *damnum absque injuriam*, is not the subject of any action. The true translation of that phrase is, simply, *"loss without wrong"*— suffering sustained by one party, without *fault* by the party causing it. The present writ alleges a loss sustained by the plaintiff, but alleges no fault or neglect committed or suffered by the defendant. The common law does not know how to deal with such a case.

The familiar maxim of the common law that "wherever a statute gives a right, the party shall, by consequence, have an action to recover it," has its proper application and its necessary limits.

It is found stated in the foregoing words in 2 Dane's Abr. 486, and is, in its terms, a very broad and general declaration. But upon page 481, the same author lays down that "no man can be liable to an action, but in one of three ways"; 1, upon his promise; 2, upon some wrong; 3, because some law specially gives the action. And see sect. 4, on p. 482.

It requires but a moment's reference to the cases cited by Dane, at the place first quoted, to see that it is not merely the statutory *declaration of a right*, which gives a party an action, but there must be some *violation* or withholding of that right, and then we have the "*damnum cum injuria*," which authorizes the action on the case, as stated in 2 Dane, p. 486, § 24.

The case in 2 Salk. 415, is the same with that in 6 Mod. 26. It is held, that a devisee may maintain an action at common law against a tertenant for a legacy devised out of land, "for, where a statute, as the statute of Wills gives a right, the party by consequence, shall have an action at law to recover it."

Now the statute of Wills, (32 Hen. 8, c. 1,) was merely a statute, by which the king, waiving his own prerogative dominion over the property of his subjects, authorized them to

make testamentary dispositions of their estates. Under wills so made, undoubtedly devisees would acquire rights; but it would be absurd to hold, under that, or any other statute of wills, that a devisee, by the mere terms of the statute, could sue for the benefit given him. There must first be, a withholding, or denial of the right, and then we have the common and indispensable element of a *wrong done* against such right — in one word, a *delictum,*— which is the essential and central idea of every form of an action on the case.

Dane refers also to 1 Com. Dig. 223, folio ed. [The place referred to is at the beginning of the sub-title "Action upon statute," under the general head of "Action upon the case,"] which lays down, that "upon every statute, made for the remedy of any *injury, mischief* or *grievance,* an action lies by the party *grieved,*" where the terms all import a *wrong* done, or a right violated, in accordance with the doctrine of the same author, who states, [Action on the case, "*When it lies,*"] "An action upon the case is founded upon a *wrong,*" and, "In all cases, where a man has a temporal loss or damage, by the *wrong* of another, he may have an action upon the case to be repaired in damages."

Comyn refers to 2 Inst. 55, 118, and this carries us back to rights and remedies under Magna Charta itself. Coke says, in interpreting the clause, "*Nulli rendemus,*" &c., "And, therefore, every subject of this realm, for *injury* [that is, in Saxon, *wrong*] done to him in goods, lands, or person, by any other subject, may take his remedy by the course of the law, and have justice and right for the injury done to him."

And, more specifically, (2 Inst. p. 118,) discussing the statute of *Marlebridge,* the same authority declares, "When any act doth prohibit any *wrong or vexation,* though no action be particularly named in the act, yet the party grieved shall have an action grounded upon this statute.

The whole thing is comprehensively and explicitly stated by the Court in 11 Johns. 140, "It is the pride of the common law, that wherever it recognizes or creates a private right it also gives a remedy for the *wilful violation* of it." In like

manner, where a *statute* creates a private right, it is the pride of the common law to supply a remedy for the "*willful violation* of it," but not otherwise. The common law supplies no remedy, where there is no *wrong.*

A familiar maxim upon this subject is very tersely expressed in four words — "*ubi jus, ibi remedium.*" Equally succinct, and more precisely accurate, however, is the formula — "*ubi injuria, ibi remedium.*" It is plainly not the mere existence of the *jus* which gives a right of action, but the violation of it, — in other words, the *injuria.* And our best elementary authority on these subjects, (1 Chitty's Pleadings, 85,) quotes from the leading case of *Pasley* v. *Freeman,* that, "where cases are new in their *principle,* it is necessary to have recourse to legislative interposition in order to remedy the grievance." Certainly, claims made under the statute of 1842, are novel in *principle,* and not merely in the *instance,* and the common law, with all its fertility of remedy, where the *instances* are alike, supplies nothing in aid of a statute, which has undertaken to create relations, upon a principle unknown to the general ideas of right and wrong.

It is confidently believed, that no form can be found, in any of the books of entries or precedents, for an action on the case, whether under statutes or otherwise, without an allegation of some wrong, violation or breach.

Familiarly, also, in all our other statutes, which create liabilities, where none would exist at common law, or are sought to be imposed upon a particular party, who would not be liable otherwise, the Legislature carefully provides for the *action* as well as for the *rights.* As, under the usury laws, laws for recovery against stockholders, pauper laws, fence laws, highway laws, and others, indefinitely.

In accordance with the views taken by the defendants, they have declined to plead the proper general issue to an action on the case. They have not pleaded that they are not guilty, because the plaintiffs have tendered no such issue. The defendants are more successful in finding a statutory plea to suit this anomalous declaration, than the plaintiffs are in finding a

valid form of remedy or declaration, either by statute or common law.

The decision in *Pratt's case* does not cover the present exception, not only because no such point was made, but because the declaration in that case was in the usual form of a common law action on the case, and specifically alleged negligence; though, as the case went forward upon an agreed statement, every question of pleading was waived. Thus, there is nothing in the present argument, which is inconsistent with the record or the trial of the decided case.

2d. The defendants object, that this action cannot be maintained against them, for want of previous notice to them of the alleged loss, and because no demand was made upon them for any sum for which they are claimed to be responsible, and they insist that this point is justly and necessarily applicable to all claims and proceedings under such a statute.

This point rests upon reason and sense, upon every idea of natural justice, and upon all the analogies of the law.

Because—a party so made responsible by mere statute, but being in no fault, shall not be sued, until he has had an opportunity to pay without suit, including the opportunity to learn the fact of liability and amount of damage.

Universally, policies of insurance provide that the insurer shall not be subject to suit, until after notice of loss, and time to make payment. This is matter of contract, and common reason requires the contract to be so made. *A fortiori*, a party compelled by statute to become an insurer, and incurring liability without fault or neglect, shall have reasonable notice before suit. To hold that the statute subjects him to costs, before he has knowledge that the liability has accrued, or what damage is incurred, is to hold the statute manifestly unjust and oppressive.

All claims resting upon contingencies, where the knowledge that the contingency has become fact, is in possession of the claiming party, require notice of the event, before suit. Even if a railroad company be supposed to know, in all cases, that its engine has caused a fire, with damage to other parties—

Stearns *v.* Atlantic and St. Lawrence Railroad Co.

which is not a supposable case—yet it is plain that it cannot know, until notice from the suffering party, what kind or amount of damage has been sustained. Nor can it possibly be supposed that it should be ready to pay, instanter, a claim of which it had never before heard.

The ancient English law furnishes a convenient analogy. The Hundred was liable to make compensation for robberies. But the Hundred was in no fault. Yet public policy required that it should make good the loss of the suffering party. Not, however, until after hue and cry, nor until after most explicit and formal notice. See the abstract of the statutes in 2 Sell. 79, and the form of declaring in 2 Saund. 375. [One of the *notes* in 2 Saund. is wrong, as appears by reference to the case cited, 2 Salk. 614, where the point decided was upon the *oath*, not upon the *notice.*]

The statutes of Hue and Cry go back to the period, where are found also the fountains of the common law. They are arbitrary in the liabilities they create, but they adopt the principles of the common law in their process, and it is worthy of remark, in support of our first exception, that they do not stop with merely declaring that the Hundred "shall be held responsible," after the manner of our statute of 1842, but they specially provide a form of remedy, and a means of recovery.

More familiar analogies are abundant, as in the case of indorsers, guarantors, actions upon bank deposits, town orders, and contingent claims of that kind where, though in some of the instances, it would now be held, that the *contract* was to pay only after notice and demand, yet it is the common law which has made that to be the contract, for the obvious reason that otherwise the party against whom the claim is made, can have no previous knowledge, what will be claimed, or when it will be made. So, in the large class of cases, where trover is not maintainable until after demand; the chief distinction between this and the other class of cases in trover, being that in the one there is no legal fault until after demand. And generally, where there has been a breach of contract, or any

tort feasance or neglect, with injury, action lies at once. But not, where the party claimed against has neither done any wrong, nor has any knowledge of the existence of a claim.

The two cases in Massachusetts, 4 Cush. 288, and 13 Met. 99, both show expressly that demand was made before suit brought.

3d. Upon the point made in regard to the lease, the defendants do not now controvert the actual decision in the case of *Whitney* v. *Atlantic & St. Law. Railroad*, 44 Maine, 362. The liabilities rising under the duty of building and maintaining fences, a matter appertaining to the *structure* of the road, may be left as they are left under that decision. Notwithstanding, however, the more comprehensive *dicta* contained in the opinion, the defendants, having regard to the importance of an explicit definition of their position, under other classes of duties, feel at liberty to ask the attention of the Court to some further considerations touching the liabilities that may arise from the actual business of "maintaining and operating" the line, especially since the liability discussed in the present argument is one of so very peculiar nature, and there is much reason to hold that the general statute comes in aid of the view, which the defendants take of the Act authorizing the lease.

The attention of the Court has already been called to another peculiar duty, supposed to arise in the maintenance and operation of the line; that is, the duty of connecting with other roads, whether under the charter, or under the Act of 1854, on this subject. Whether the discharge of this duty is to be worked out by process against the lessors or the lessees, (if the Act of 1854 applies to either,) has been discussed in the case of the *Portland and Oxford Central Railroad Co.*, petitioners, against the *Grand Trunk Railway Co. & al.*, now before the Court.

Yielding then, that where a duty and liability goes to the structure of the work, the lessors may not be exonerated in any event, yet, when the lease Act, with equal explicitness declares that the lessees shall be enabled to "maintain and

operate" the line, it means that they may, of themselves, according to their own discretion, for their own interest, at their own risk, subject to the law, do all those things which pertain to the current business of the road as railroad proprietors, and that the benefits and the hazards belong to them and not to the lessors.   If the lessees contract to carry goods or persons, and do not perform their contracts, the breach is upon them, and not upon the lessors.   If, in maintaining and operating the line, they act negligently or tortiously in any manner, the tort is plainly theirs, and cannot be regarded as the act of the lessors, who are not in possession and not in control, but, in fact, ousted, by the law as well as by the lease, from all authority and all power of control.   And, *a fortiori,* in a case like this, where there is no tort, but only an arbitrary responsibility, created by statute, against those who own and work the locomotive, which causes the fire.

The defendants contend, as was contended in the case last referred to, that an interpretation of the lease Act, which makes the lessors universal and perpetual guarantors for all acts of the lessees, is so extremely onerous, that it ought not to be made out, in the slightest degree, by inference or implication.   If the Legislature had meant that, it would have said so.   Instead of merely declaring that the Atlantic Company should be held responsible for all its own duties and liabilities, it would have provided, that notwithstanding any change of title or possession by the lease, the lessors should be answerable for every thing done or omitted by the lessees. Instead of providing only for the existing actual duties and liabilities of the defendants, "*now imposed* upon them," it would have made them explicitly chargeable for all the *potential* and future liabilities, which might accrue in the subsequent use and working of the property.

It is noticed, that in the case of *Whitney,* as reported, the argument of plaintiff and the opinion of the Court, in reciting the non-exoneration clause of the lease Act, both omit the word "*now,*" contained in that clause; an omission doubtless inadvertent, perhaps unimportant.   Yet, the defendants, as

matter of recollection, know, and as matter of construction, insist, that that word was designed to indicate such a distinction between the actual and the potential as is contended for in this case.

Certainly, the lease Act does absolve the Atlantic Company from some of the duties required by its charter,—from this very duty of working the line. The 12th section of the charter requires that the company shall supply carriages, and shall be obliged to receive and carry passengers and goods. But the lease Act says, that the lessees may do this, and that the lease may be so made as that they shall be enabled to do it— clearly discharging the lessors from all this duty—not providing that they may do it, by the lessees, as their servants or agents, but that the lessees may do it themselves, by an actual, independent, legislative authority. Therefore, whatever liability to other parties arises in the doing of this, is the liability of those who do it, not of those who are discharged from doing any thing at all.

If the duty should be wholly omitted, then a question would arise with the State, which would act, not upon any matter of fault of this or that party, not upon any question of principal or agent, lessor or lessee, but upon fundamental questions of franchise, over which the State retains full control, and full power of correction.

It is of importance to observe, that the Act of 1842, expressly contemplates that the fire damage in question, may be caused by a locomotive belonging to a party, which does not own the franchise of the road on which it is running. The second section of that Act, which is still in force as a general law, directly authorizes a connecting road company, under certain conditions, to run its own locomotive over the road of another company. It then justly provides, that when injury is done by fire from the engine of *any* railroad corporation, *the said* corporation shall be held responsible in damages. The liability is cast upon the party which does the damage, not upon the party holding the franchise of the road on which it is running.

So that there is just reason to hold that the Act of 1842, regarded by itself alone, provides that the remedy, in a case like this, (if there is any remedy,) shall be sought against the party which does the act, and not against any other.

The present case finds that long before, and at the time of the alleged injury, the Atlantic Company was out of possession, had no control over the running, did not work the locomotive, and never owned it, and was not acting by any servant or agent in the matter in question. Another party was in possession under statute law, was the owner of the locomotive, and was running it, by its own servants, for its own benefit.

*Howard & Strout*, for plaintiffs, to the objection that the statute of 1842 gives no remedy and prescribes no form of action, replied, that the statute creates the liability of the party causing the injury, and recognizes the right of the party injured to redress. Wherever the common law recognizes or creates a legal right, it will confer a remedy by action. *Birkley* v. *Presgrave*, 1 East, 226; *Yates* v. *Joyce*, 11 Johns. 140.

So, if the right be created by statute, and be invaded or impaired, with or without violence, the common law will confer a remedy when none is provided by statute. *Ubi jus, ibi remedium.* 2 Inst. 118.

At common law, if no form of action could be found in the register, adapted to the nature of his case, yet the plaintiff was at liberty to bring a special action on his own case. 1 Chitty's R. 95, 96; 2 Black. R. 1113. This Court has power to issue all writs and processes, which may be necessary for the furtherance of justice, and the due execution of the laws, R. S., 1841, c. 96, § 5, and may mould the process and the form of action to an efficient remedy.

In their argument, that the statute was binding on the defendants, and was not unconstitutional, the counsel cited *Hart* v. *the Western Railroad Co.*, 13 Met. 99; *Lyman* v. *the Boston & Worcester Railroad Co.*, 4 Cush. 290; *Chapman* v. *the*

*Atlantic & St. Lawrence Railroad Co.*, 37 Maine, 92; *Pratt v. same*, 42 Maine, 579.

As this is a claim founded in wrong, an action *ex delicto* lies without demand or notice. For, so is the law, whether the tort arise from non-feasance, malfeasance or misfeasance. 1 Chitty's Pl. 133, 134.

The statute of 1842, c. 9, § 5, is general in its terms, and applies to railroad corporations subsequently chartered, as well as those then existing, and *a fortiori* to the former. There is no exemption from such liability in the charter of the defendants, granted February 10, 1845. The Act, under which the defendants executed a lease of their railroad, provides expressly that " nothing contained in this Act, or in any lease or contract that may be entered into, under the authority of the same, shall exonerate the said company or the stockholders thereof, from any duties or liabilities now imposed on them by the charter of said company, or by the general laws of the State." Special Laws of 1853, March 29, § 1.

By effecting the lease, therefore, the defendants could not avoid their responsibility in this and similar cases. Their lessees were authorized to " maintain and operate the railroad and connecting lines," and were, *quasi,* the agents and employees of the lessors. The lease was intended to be, and was in fact, made to the Grand Trunk Railway Co. of Canada, a foreign corporation, not amenable to this State, or to the jurisdiction of this Court, and hence the responsibility of the defendants was coupled with the authority to lease; in order to secure to all, rightfully commencing suits in this State, a just and legal indemnity in damage, for wrongs and injuries inflicted by the defendants, their agents and lessees, in accomplishing the objects for which they were created and allowed to maintain and manage their railroad.

The locomotive engine, by which the fire was communicated, though purchased by the lessees, was used and intended, as appears by the evidence in the case, to enable them to " maintain and operate" the railroad of the defendants, under the lease, as contemplated by the Act of 1853. And, to that

end, may well be regarded as the engine of the defendants, *quoad hoc*, it was their engine, upon their railroad, operated by their agents, to perform their duties, and accomplish their business and purposes, as between them and the public. *Whitney* v. *the Atlantic & St. Lawrence Railroad Company*, 44 Maine, 362.

It is not perceived that the settlement with Thomas Stearns, in 1854, of " damages, and the adjustment of lines between them," can have any material bearing upon the matter in controversy in this suit. *Lyman* v. *the Boston & Worcester Railroad*, 4 Cush. 290. The subject of this controversy did not exist at that time, and was not embraced in that settlement.

The plaintiffs having procured insurance upon their property destroyed, and for which they now claim compensation, is of no importance to the defendants. Even if the plaintiffs had received compensation from the insurance company, it would not exonerate the defendants from their liability under the statute, and would furnish no bar to this suit. How the equities between the insurance company and the plaintiffs might be affected, under such circumstances, is not a matter to be agitated by the defendants. *Hart* v. *Western Railroad Co.*, 13 Met. 99.

The fifth request for instruction was properly refused, if, as we have attempted to show, the defendants are subject to the provisions of the Act of 1842. Whether the property destroyed was placed upon the plaintiffs' land before or after the location of the railroad, does not justify the burning in the manner alleged.

The defendants are responsible for the property destroyed by fire communicated by their engine, on which it would have been practicable to effect insurance, by use of reasonable diligence, as held by this Court in *Chapman* v. *the Atlantic & St. Lawrence Railroad Co.*, 37 Maine, 92. The sixth request was therefore properly refused.

The seventh request was given with suitable qualifications. The jury must have found, under the instructions from the Court, that the plaintiffs did not contribute to the injury of

their property, or increase the risk, so as in any manner to occasion the loss.

It is not perceived how the eighth requested instruction could have been given by the presiding Justice, without invading the province of the jury, and assuming to settle facts which they only were competent to determine.

The opinion of the Court was delivered by

MAY, J.—At the trial of this action several grounds of defence were urged, which, in consequence of subsequent decisions, are now abandoned. Such as remain, and have been presented to our consideration in argument, we will consider, and such only; regarding all other grounds, as waived by the learned counsel who has so ably conducted the defence.

The first objection now raised, is, that this action cannot be maintained because no remedy is given by the statute creating the liability; nor by any other statute; nor by the common law. That the statute, upon which the plaintiffs base their right to recover, gives to them a right to compensation for the injury they have sustained, is not denied, stat. of 1842, c. 9, § 5; but, it is insisted, that the creation of such a right is wholly unavailing to the party injured, unless the same statute, or some other, also provide some form of remedy. But such is not the law. Some form of action may always be maintained for a violation of a common law right; and, it is often said to be the pride of the common law, that it furnishes a remedy for every wrong. In the absence of any authority to the contrary, it is not perceived why a legal right to compensation for actual damages sustained, even though such right depend wholly upon a statute, is not as worthy of protection in a court of law, as any common law right. The common law is said to be, in fact, nothing but the expression of ancient statutes; but, whether this be so or not, the injury for a violation of a statute right, is as real as are injuries which exist only by the common law.

If a man has a right, he must, as has been observed in a celebrated case, have a means to vindicate and maintain it,

and a remedy, if he is injured in the exercise and enjoyment of it; and, indeed, it is a vain thing to imagine a right without a remedy, for want of right and want of remedy are reciprocal. *Ashby* v. *White*, 2 Lord Raym. 953; *Westmore* v. *Greenbank*, Willes, 577, cited in Broom's Maxims, 147. To deny the remedy is therefore, in substance, to deny the right. And it makes no difference, whether the right exists at common law or by statute. Hence the familiar maxim quoted by the counsel in defence, that "wherever the statute gives a right the party shall, by consequence, have an action to recover it." The authorities cited in defence will be found to be in harmony with this maxim. The rule is now understood to be well settled, that when a statute gives a right, or forbids the doing of an injury to another, and no action be given therefor in express terms, still the party shall have an action therefor. Broom's Maxims, 149, 150, and cases there cited. The cases cited for the plaintiffs not only sustain the same position but also show, that where no other remedy is provided, the proper remedy is a special action on the case.

It is said, however, that in all these cases the fact that a wrong had been done, is recognized by the Court, while, in the case at bar, the defendants are without fault. This may be true; if the defendants, or their lessees, are required in the running of their engines, to exercise only that degree of care which is required by the common law. But something more than ordinary care, at least by a strong implication, is made necessary by the statute on which this action is founded. In the rightful exercise of its powers, the Legislature has determined, that if the locomotive engines of any railroad corporation are driven by them, or their agents, in such a manner, or under such circumstances, that fire shall be communicated thereby to the property of any person or corporation along its route, such railroad corporation shall be held responsible in damages to the person or corporation injured. The degree of care, therefore, which is required to protect such railroad corporation against liability for damages, occa-

sioned by fire so communicated, is such as will prevent all such injury. If they exercise such care they are safe, otherwise they are not. We cannot say, considering the dangerous nature of this element, and the vast amount of property along our railroad routes which is exposed to its devouring flames, that such a rule is not required for the public good, or that when a less degree is exercised, even though it be all which ordinary prudence might require, the corporation is without legal fault. There is at least a statute wrong. The foundation, therefore, for the alleged distinction between this case, and those referred to in the cases cited, does not exist; and the exception to the ruling of the presiding Judge on this point, is not sustained.

It is further said that the declaration in the plaintiff's writ alleges no wrong. If it be defective in this particular, the omission is of such a character that it can be set right upon a motion to amend. We do not decide, however, that it is insufficient as it is, especially after verdict.

It is next contended that this action cannot be maintained, for want of notice and demand previous to the suit. No such preliminary acts are required by the terms of the statute. The liability in this case is likened to that on contracts of insurance, and it is insisted that the same rules as to notice and demand, should apply. But in cases of insurance, these preliminaries to a suit are provided for by the express terms of the contract. In the absence of such a provision, we are aware of no case in which it has been held that an action might not be instituted at the moment the loss occurred and the liability attached. This case falls within the rule stated by the counsel in defence, that "generally, where there has been a breach of contract, or any tort-feasance or *neglect with injury,* an action lies at once." As we have already seen, the defendants are not to be regarded as wholly without fault. The ruling, therefore, which was requested upon this point, was properly withheld.

The third, and only other point argued in defence, is, that

upon the facts in this case, these defendants are not liable, and that, if any liability exists, it is against their lessees. The correctness of the decision in the case of *Whitney* v. *these defendants*, 44 Maine, 362, is not controverted; but it is urged that there is such a marked distinction between the facts in that case, and the facts in this, that it does not necessarily follow, that the question determined in that case is decisive of this. The principal difference between the cases consists in this, that in the former, the liability arose from a neglect to perform a duty enjoined upon the defendants by their charter, relating to the structure and fencing of their road; while, in this case, it is imposed by a subsequent statute, upon any railroad corporation, by whose engine the fire causing the injury was communicated. It appears, also, that the engine, by which the fire now complained of, was set, was not among the property contained upon the schedule annexed to the lease, and so was not then and thereby transferred by the defendants to the use and possession of their lessees. It appears to have been purchased by said lessees long after the making of said lease.

The liability of the defendants, if liable at all, was created by the statute of 1842, c. 9, § 5, before cited, which provides that " when any injury is done to a building or other property of any person or corporation, by fire communicated by a locomotive engine of any railroad corporation, the said corporation shall be held responsible in damages to the person or corporation so injured." It also contains other provisions not now necessary to mention.

The statute imposing this liability upon the defendants was passed long before the transfer of the use and possession of their road to their lessees; and, by the express provisions of the statute of 1853, c. 150, § 1, authorizing the defendants to lease their road, it was enacted, that nothing contained in said Act, or in any lease or contract entered into under the authority of the same, should exonerate the said company, or the stockholders thereof from any duties or liabilities then

imposed upon them *by the charter of said company* or *by the general laws of the State;* nor does it appear from the lease, in fact, executed, that any such exoneration was attempted.

Whatever duties or liabilities, therefore, were assumed by the defendants, by the acceptance of their charter, or afterwards rightfully imposed upon them by the laws of the State, were, at least for the purposes of a remedy, to remain and continue to be obligatory upon them in the same manner, and to the same extent, as if the lease had not been executed, and the use, possession, and management of their property had not been transferred to their lessees. To meet such liabilities, and to indemnify themselves against loss, from any neglect on the part of their lessees to perform all such duties, and to pay all such indebtedness as had arisen, or might subsequently arise, out of such liabilities, the defendants were careful to secure themselves, by appropriate covenants in the indenture or lease between them and their lessees. Such, therefore, must have been their understanding of the statute, and of the extent of their liability. It cannot be material whether the duty or liability to be enforced arises out of the provisions of the charter, or, as in this case, out of a subsequent general law.

Nor do we see any ground upon which to restrict the liability of the defendants, contemplated by the statute authorizing the lease, to such claims as arise from the duties in relation to the structure of the road, or from any neglect properly to construct and fence it. The statute clearly extends, not only to such liabilities, but to all others arising from the violation of any corporate duty which was imposed upon the defendants, either by their charter or by some general law. "The comprehensive *dicta,*" therefore, of Justice CUTTING, as contained in the opinion drawn by him, in the case of *Whitney* v. *these defendants,* before cited, is fully warranted by the language of the statute. To limit the liability of the defendants, in the manner which is contended for in defence, would be doing violence to the manifest intention of the Legislature,

and would, in effect, be to turn all parties having valid claims, arising from the mismanagement of the road, or from the omission or commission of acts by their lessees, which are required or prohibited by the charter of the defendants or the statutes of the State, over to a foreign corporation and a foreign jurisdiction, for the adjustment of their rights and satisfaction of their claims. It would be doing the very thing which the statute was designed to prevent. The lessees may " maintain and operate" the line of the road. They may have the whole control and management of it, but the lessors cannot thereby be exonorated from answering for any neglect of duty or liability imposed upon them by law.

Nor does the fact, that the locomotive engine, from which the fire was communicated to the property of the plaintiffs, was not among the specific property originally leased, relieve the defendants from liability. It is apparent from the terms of the lease, that the defendants, not only still retain a reversionary interest in all the property, the use and management of which was transferred to their lessees, but in all such property as should subsequently be substituted therefor, or added thereunto by the lessees during the continuance of the lease; and, by the covenants in the lease, the lessees are expressly bound, not only to keep the said railroad in repair, but constantly equipped with all necessary apparatus, and other moveable property of every kind, and from time to time to make such additions thereto and renewals thereof, as shall be necessary for the transportation of the largest practicable number of passengers, and amount of freight. All such property, whether purchased or renewed in pursuance of the lease, immediately becomes subject to, and is held for the lessors, subject to its provisions; and, according to the contract, is as much a part of the leased estate as that which was referred to in the schedule annexed to the lease. The engine therefore, by which the fire complained of was set, was the engine of the defendants, within the meaning of the statute upon which the liability of the defendants depends. It was

not the engine of any connecting road. Had it been such, whether the defendants would, or would not have been liable, we are not now called upon to decide. Nothing, therefore, is found in the facts of this case to take it out of the rule which was established in the case of *Whitney* v. *these defendants,* before referred to. *Exceptions overruled, and Judgment on the verdict.*

TENNEY, C. J., and APPLETON, CUTTING, GOODENOW, and KENT, J. J., concurred. DAVIS, J., concurred in the result.

# CASES

IN THE

# SUPREME JUDICIAL COURT,

FOR THE

## MIDDLE DISTRICT.

## 1858.

### COUNTY OF KENNEBEC.